JOHN F. LANE, ADMINISTRATOR, *vs.* THE UNITED ELEC-
TRIC LIGHT AND WATER COMPANY.

Third Judicial District, Bridgeport, October Term, 1915.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, JS.

In an action for causing death by negligence, the amount recoverable—
within the statutory limit of $10,000—is measured in this State by
the economic and not the sentimental value of the decedent's life
to himself; and this value, in turn, frequently depends, as in the
present case, upon the loss of the decedent's earning capacity. How
long he would have lived but for his mishap, or what his state of
health or earning ability would have been, cannot be known, and
therefore the problem of estimating damages for the loss of his
life, with any exactness or precision, is one beset with insurmount-
able difficulties. Under these circumstances a verdict representing
the views of twelve men should not be set aside unless it be so
palpably inadequate or excessive as to indicate that it was in-
fluenced by improper considerations.

In the present case the only evidence touching damages was that the
decedent, who was instantly killed by an electric current, was
thirty-three years old, in good health, and with an expectancy, ac-
cording to the mortality tables, of thirty-three years more; that he
was a policeman in Waterbury and was then receiving $2.25 a day
and would have become entitled to $3 a day after eighteen months'
further service. The jury awarded the plaintiff administrator
$1,750, and the trial court refused to set aside the verdict as in-
adequate. *Held* that in view of the uncertainty upon that subject
and the absence of any definite standard of measurement, this
court was not prepared to say that the verdict was so inadequate as
to indicate error upon the part of the trial court in refusing to set it
aside.

As relevant to a loss of earning capacity, the trial court instructed the
jury that they had "the right to consider" the decedent's age, his
expectancy of life, his physical and mental condition, his earnings,
and his probable occupation and earnings had he lived. *Held* that
the use of the permissive rather than the imperative form of lan-
guage, could not have left any doubt in the minds of the jurors that
the elements enumerated by the court were to be taken into account
in estimating the probable future earning capacity.

In the same connection the jury were told to bear in mind the possibil-
ities of accident, sickness, or other happenings which might have
intervened to prevent the earnings or affect the earning capacity

of the intestate, had he lived. *Held* that these incidents of life, based upon human experience, were factors essential to be considered by the jury in reaching an impartial estimate of damages; and that calling them "possibilities" did not change their nature nor render the instruction erroneous.

Argued October 28th—decided December 17th, 1915.

ACTION to recover damages for negligently causing the death of the plaintiff's intestate, brought to the Superior Court in New Haven County and tried to the jury before *Reed, J.;* verdict for the plaintiff for $1,750, which the trial court refused, upon motion of the plaintiff, to set aside as inadequate, and from this refusal the plaintiff appealed, alleging, also, a misdirection in the charge respecting the subject of damages. *No error.*

*Edward B. Reiley,* for the appellant (plaintiff).

*Walter E. Monagan,* for the appellee (defendant).

PRENTICE, C. J. The only evidence touching the matter of damages was that the plaintiff's intestate was instantly killed by an electric current; that he was thirty-three years of age at the time of his death and in good health; that the expectation of life of a man of his age, according to the mortality tables, was thirty-three years; and that he was a patrolman in the police department of the city of Waterbury then receiving $2.25 a day, and by the rules of the department entitled to receive $3 a day after eighteen months' further service.

The amount of recovery in this State, where the injuries received have resulted in death, is determined from the standpoint of the deceased. In so far as the death is concerned, its measure, within the statutory limit, is the value of the life to him whose life has been cut off; and this value is its economic rather than its

sentimental value. *Broughel* v. *Southern New Eng. Tel. Co.*, 73 Conn. 614, 619, 620, 48 Atl. 751; *Kling* v. *Torello*, 87 Conn. 301, 306, 87 Atl. 987.

In the present case there was no pain or suffering preceding death shown to enhance the damages. The only evidence presented upon which a claim of loss is predicated, is that indicating a loss of earning capacity by reason of life becoming prematurely extinct. The injury is thus one for the measure of which no money standard is or can be applicable, and the elements to be considered lie largely in the realm of uncertainty. *Broughel* v. *Southern New Eng. Tel. Co.*, 73 Conn. 614, 621, 48 Atl. 751. What the intestate's length of days would have been but for the mishap which befell him, or what his state of health or earning ability, cannot be known. Therefore the problem of estimating damages for the loss of his life with any exactness is, as in every such case—and in many another where damages are sought—one beset with insurmountable difficulties. The law, nevertheless, undertakes to do justice as best it can, although of necessity crudely. The solution of the problem is left to the trier's good judgment.

Such problems are peculiarly appropriate for a jury's deliberation in which twelve individual judgments are set to the task of estimation, and the verdict is a composite of the views of the twelve. The fairness of the resultant award cannot well be subjected to any recognized test, or measured by any certain standard. It may be so palpably inadequate or excessive as to indicate that it was influenced by improper considerations, and in such case should be set aside; and if those indications are too plain to be mistaken the appellate court should not hesitate to remedy the trial court's failure to do its duty. But where the matter is submitted to a jury of twelve men to exercise their com-

bined judgment, wide latitude must be accorded to them, and their verdict should not be disturbed for difference in judgment, even if considerable.

The award in this case is a small one. Reasons for a larger one can easily be found. Nevertheless it represents the judgment of the jury, to whom its determination is by law entrusted, and the trial court has approved of it as one which reasonably might have been reached. We are, therefore, not prepared to say, in view of the uncertainties attending the subject and the absence of a definite standard of measurement, that the verdict is so inadequate that the trial court erred in not setting it aside.

The trial court's instructions upon the subject of damages followed quite closely, in substance at least, the language of this court in *Broughel* v. *Southern New Eng. Tel. Co.*, 73 Conn. 614, 48 Atl. 751. The only criticisms made of them are (1) that there was a failure to charge that the jury "should consider the probabilities of the duration of the life of the plaintiff's intestate," and (2) that the jury were told that they were "to bear in mind the possibility of accident or sickness or other happenings which might intervene to prevent the earnings or affect the earning capacity" of the intestate had he lived.

Both criticisms are verbal rather than substantial. The first, as it is interpreted by the brief of the plaintiff's counsel, amounts to this: that the court, in a passage in its charge dealing with the elements to be considered in determining the amount of damages recoverable, used language permissive and not imperative in form. After indicating that the amount was to be measured by the value of the life from the standpoint of the deceased, the court said that oftentimes the chief or only element to be considered was loss of earning capacity, and that such was the situation in

this case. It then added that "as relevant to such value, you have the right to consider, if you find the evidence warrants it, the age and expectancy of life, the physical and mental condition, the earnings, and the probable occupation and earnings of the deceased had he lived." The error charged is the failure to use the imperative in this sentence. Read in connection with the context, the language of the court here could have left no doubt in the mind of the jurors that the elements enumerated by the court were to be taken into account in estimating the probable future earning capacity. They could not reasonably have gathered the idea that they might consider or ignore the elements enumerated as it pleased them. The gist of the instructions was that they were the pertinent subjects of inquiry in arriving at the answer to the ultimate question to be determined.

The passage which is the subject of the second criticism, immediately follows the one last referred to, and was in amplification and further explanation of it. Having in the former sentence told the jury that they had the right to consider the probable earnings of the deceased had he lived, it was pertinent and only fair to remind them that all the natural incidents of life, which in the normal process of existence might be expected to reduce the aggregate earning capacity, should be taken into account as well as the mere period of existence. Accident, sickness, disability, old age and the like, are such common incidents of life that they are to be expected in greater or less measure by all men, and certain of them especially by men in certain employments or environments. Any true estimate of what a given man may be expected to do in the future, especially in the way of earning, must take note of them, and one which ignores them is not impartial. As in estimating the probable duration of life of a given

individual we take into account the average experience, so in estimating his probable earning capacity looking to the future we are entitled to consult human experience, and inquire how it is with the average man, and the average man in his position, in regard to those things which bear upon earning power. In neither matter can anything be known. The best that can be done is to make a forecast by the aid of human experience. This forecast, to be of value, must take into account all material factors. So, when earning capacity is concerned, a forecast which omits such material factors as disability from whatever cause is an unfair one.

The burden of the criticism which is made of this passage is that the jury were thereby told to consider mere possibilities in estimating damage, and the case of *Johnson* v. *Connecticut Co.*, 85 Conn. 438, 83 Atl. 530, is pointed at as forbidding such practice. This is refined criticism which has no other foundation than the use by the court of the word "possibilities." In fact the things of which the court was speaking were something more than possibilities. They were rather probabilities based upon human experience. What the court meant, and what the jury must have understood that it meant, was the simple common-sense proposition that in estimating the loss of earning capacity there was to be taken into account not only the intestate's expectancy of life in respect to its length of days, but also his expectancy in respect to those other incidents of human existence which affect one's ability to work and earn.

There is no error.

In this opinion the other judges concurred.