## GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA *v.* POWERS, BOLLES, HOULIHAN AND HARTLINE, INC.
### (13272)

FOTI, LAVERY and LANDAU, Js.

Argued April 20—decision released June 27, 1995

*William F. Corrigan,* for the appellant-appellee (plaintiff).

*Joseph T. Sweeney,* with whom was *Daniel P. Scapellati,* for the appellee-appellant (defendant).

FOTI, J. The underlying action in this case was brought by the plaintiff insurance carrier against the defendant insurance agency. The action alleged both breach of contract and negligence on the part of the defendant. The jury returned a verdict in favor of the plaintiff on the breach of contract claim and in favor of the defendant on the negligence claim. The plaintiff filed motions to set aside the verdict and for additur, which the trial court denied. The defendant filed a motion to set aside the verdict on the breach of contract claim only, which the trial court denied. The plaintiff appeals, claiming that the trial court improperly (1) denied its motion for additur, (2) refused to submit separate verdict forms to the jury, (3) refused to instruct the jury as to the writing requirement of General Statutes § 38a-336 (a) (2), and (4) precluded one of the plaintiff's expert witnesses from testifying as to whether the writing requirement of § 38a-336 (a) (2) was satisfied. The defendant has filed a cross appeal, claiming that the trial court improperly denied its motion to set aside the verdict on the breach of contract claim.

The relevant facts are as follows. On January 19, 1990, the plaintiff and the defendant were parties to an insurance agency agreement. At that time, the defendant processed an application from Barbara Zakrzewski to the plaintiff, requesting automobile insurance for each of two automobiles owned by Zakrewski. The application form utilized by the plaintiff was entitled the "Acord Personal Automobile Application." This form was completed by the defendant and signed by Zakrzewski. It requested $100,000 of liability coverage and $40,000 of uninsured-underinsured motorist cover-

age for each of her two automobiles.[1] At the time of Zakrzewski's application for automobile insurance, General Statutes (Rev. to 1989) § 38-175c (now § 38a-336) required that every automobile liability insurance policy "issued or renewed on and after July 1, 1984" was to have uninsured motorist coverage equal to the liability coverage of the policy "unless the insured requests in writing a lesser amount."[2]

On July 19, 1990, Zakrzewski's son, John Sliwka, was seriously injured in a motor vehicle accident when the car in which he was a passenger went off the road and overturned. Sliwka filed a claim against the operator's insurance carrier, which paid its policy limit of $20,000. Sliwka then filed a claim against the plaintiff for underinsured motorist coverage under Zakrzewski's policy. Sliwka alleged that there had been no written request by Zakrzewski for uninsured-underinsured motorist coverage in an amount less than the liability coverage, as required under § 38a-336. Because the policy provided for $100,000 of liability coverage, Sliwka filed a claim based on $100,000 of uninsured-underinsured motorist coverage for each of two vehicles. Sliwka's claim was for $180,000.[3]

---

[1] Uninsured motorist coverage provides "protection against operators of uninsured and underinsured motor vehicles, as well as insured motor vehicles whose insurers become insolvent." *American Motorists Ins. Co. v. Gould*, 213 Conn. 625, 628, 569 A.2d 1105 (1990). Statutory provisions applying to uninsured motorist policies apply equally to underinsured motorist situations. Id.

[2] General Statutes (Rev. to 1989) § 38-175c (a) (2) provides in pertinent part: "Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112."

[3] This figure is the total of $100,000 of uninsured-underinsured motorist coverage for each of two vehicles. This was reduced by $20,000, which Sliwka received from the automobile operator's insurance carrier.

After determining that the Acord application signed by Zakrzewski did not fulfill the statutory requirement of a written request for a lower limit of uninsured-underinsured motorist coverage, the plaintiff concluded that it owed Sliwka up to $200,000 in uninsured-underinsured motorist coverage. The plaintiff subsequently settled the claim with Sliwka for $160,404.

Thereafter, the plaintiff filed a two count complaint against the defendant, alleging both breach of contract and negligence. The plaintiff alleged that the defendant was liable for failing to obtain a written request from Zakrzewski for uninsured-underinsured motorist coverage in an amount less than the liability coverage. The plaintiff claimed damages of $105,530, the amount by which the plaintiff's payment to Sliwka exceeded the intended coverage under the policy.[4]

The focal point of the evidence during trial was the Acord application form, which had been filled out by the defendant and signed by Zakrzewski on January 19, 1990. The primary liability issue was whether that Acord application satisfied the written request requirement imposed by § 38a-366. The defendant conceded that it had a duty to obtain a sufficient written request to comply with the statute, but it argued that the Acord application satisfied that statutory requirement. The plaintiff argued that the Acord application did not satisfy the statute and that the defendant should have utilized a separate, supplemental application form which the plaintiff had prescribed.[5] The jury returned

---

[4] The plaintiff claimed that the intended coverage under the policy was $60,000. The policy called for $40,000 of uninsured-underinsured motorist coverage for each of two vehicles, totaling $80,000. This was to be reduced by the $20,000 Sliwka received from the operator's insurance carrier, leaving a total of $60,000. The difference between the plaintiff's actual payment to Sliwka and the $60,000 came to $105,530.

[5] This supplemental form specifically dealt with uninsured-underinsured motorist coverage and options available to an insured.

a verdict in favor of the plaintiff on the breach of contract count, awarding $20 in damages,[6] and in favor of the defendant on the negligence count. The verdict was accepted and recorded on September 21, 1993.

While the plaintiff raises several issues on appeal, we find the issue dealing with the statutory written request requirement to be dispositive of this appeal. Therefore, we will discuss this first.

The plaintiff argues that the trial court improperly refused to instruct the jury as to the writing requirement of § 38a-336. We agree.

At trial, the main liability issue was whether the Acord application satisfied the writing requirement imposed by § 38a-336. Both parties submitted proposed requests to charge on this issue.[7] In these proposed requests to charge, both parties indicated that the interpretation of § 38a-366 was a question of law. The plaintiff's proposed request to charge provided in part: "As a matter of law, I direct you that the statute requires that the written request rise to the level of a rejection or waiver. . . . A writing that reflects only that the insured selects the lowest possible legal amount is insufficient because it does not specifically reject or waive the mandated higher amount. . . . It is for you to determine whether the Acord Application meets this statutory requirement." The defendant's proposed request to charge provided in part: "As a matter of law,

---

[6] During the trial, the jury heard testimony from one of the plaintiff's employees that if Zakrzewski's policy had provided $100,000 of uninsured motorist coverage per car, rather than the $40,000, the premium price would have been $20 higher than the premium price actually charged.

[7] " 'In order to preserve a claim related to the giving of or failure to give a jury instruction, a party is obligated either to submit a written request to charge covering the matter or to take an exception immediately after the charge is given. See Practice Book § 315.' " *Barry* v. *Posi-Seal International, Inc.*, 36 Conn. App. 1, 8–9, 647 A.2d 1031, cert. denied, 231 Conn. 942, 653 A.2d 942 (1994).

I instruct you that so long as you find that [the] . . . Acord Application form . . . was filled out so as to request that Ms. Zakrzewski be issued an insurance policy providing her with only a $40,000 limit of underinsured motorist coverage while at the same time providing her with a $100,000 limit of liability insurance coverage, and so long as you find that that form was signed by the applicant . . . then . . . you must find that [the] . . . Acord Application form does fulfill the written request . . . requirement of § 38a-336 . . . ."

The trial court did not give either party's proposed jury instruction. Instead, the trial court furnished the jury with a copy of the statute and in its charge stated: "The law is that the amount of the uninsured or underinsured motorist coverage be equal to that of the liability coverage unless the insured elects a lesser amount of coverage in writing. Such a decision on the part of the insured must be purposeful and knowing." The trial court went on to charge the jury that the plaintiff was claiming that the defendant did not use reasonable care to obtain a written request from the insured that was knowing and purposeful. Both parties took an exception to this charge.

The plaintiff argues that the trial court's charge mischaracterized the plaintiff's claim as well as the law. The plaintiff also argues that the charge failed to provide the jury with any guidance for determining whether the Acord application met the statutory requirement of a written request for a lesser amount of uninsured-underinsured motorist coverage.

"In reviewing a challenge to jury instructions, we must examine the charge in its entirety. . . . Although the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury."

(Citations omitted; internal quotation marks omitted.) *Tesler* v. *Johnson*, 23 Conn. App. 536, 538, 583 A.2d 133 (1990), cert. denied, 217 Conn. 806, 584 A.2d 1192 (1991). "The test to determine if a jury charge is proper is whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . ." (Citations omitted; internal quotation marks omitted.) *Lemonious* v. *Burns*, 27 Conn. App. 734, 740, 609 A.2d 254, cert. denied, 223 Conn. 915, 614 A.2d 828 (1992). A charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect on the jury in guiding them to a correct verdict in the case. *State* v. *Kwaak*, 21 Conn. App. 138, 160, 572 A.2d 1015, cert. denied, 215 Conn. 811, 576 A.2d 540 (1990). In determining whether a jury instruction was misleading, it is appropriate to consider how it bears on the issues in the case. *State* v. *Shaw*, 12 Conn. App. 294, 305, 530 A.2d 653 (1987). Instructions that force the jury to decide a material question of law are impermissible. See *Bell* v. *Bihary*, 168 Conn. 269, 273, 362 A.2d 963 (1975).

Statutory construction involves a question of law. *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). To the extent that an issue involves a matter of statutory construction, it is a question of law, but to the extent that it involves an application of the statute to the actual circumstances of the case, it requires appropriate findings of fact at the trial level. See *Acro Technology, Inc.* v. *Administrator*, 25 Conn. App. 130, 134, 593 A.2d 154 (1991).

The interpretation of § 38a-366 was a question of law for the trial court. The meaning of the word "writing" as used in the statute is a matter of its construction and, therefore, a matter of law. The trial court did not make any findings regarding this question of law.

Rather, it submitted the issue to the jury. In doing so, the trial court also failed to instruct the jury adequately regarding the factual findings that underlie the question of law. There were several questions here for the trier of fact to decide. These included whether there was a writing, whether the writing was signed, whether it was Zakrzewski's signature, and whether Zakrzewski's written request for a lesser amount of uninsured motorist coverage had been made purposefully and knowingly. See *Travelers Indemnity Co.* v. *Malec*, 215 Conn. 399, 403, 576 A.2d 485 (1990). The jury heard testimony related to these issues. The only instruction the trial court gave was that the jury was required to find that the insured's request for a lesser amount of uninsured motorist coverage had been purposeful and knowing.[8]

The charge was harmful in this case because it did not provide sufficient guidance to the jury in making necessary factual findings and it allowed the jury to consider a question of law. It would have been appropriate for the trial court to direct the jury, as a matter of law, that the Acord application did or did not satisfy the statutory requirement for a written request, depending on the jury's determination of the underlying factual questions.

The defendant has agreed, in both its brief and oral argument, that the applicability of § 38a-336 to this case is a question of law, which should have been decided by the trial court rather than having been submitted, as a question of fact, to the jury. The defendant goes on to argue, however, that to the extent the issue was

---

[8] Specifically, the trial court charged: "The plaintiff asks you to find . . . that the defendant did not use reasonable care to obtain a written request from . . . Zakrzewski that was knowing, that is, that she had full understanding of the effect of her conduct, and purposeful, that she meant her conduct to result as it did."

treated as one of fact for the jury to determine, the trial court's instruction was adequate and not harmful to the plaintiff. We find this argument to be without merit.

Our full and independent review of the entire jury instruction discloses that the court's charge with respect to § 38a-366 (a) (2) was inadequate to guide the jury on issues of fact and impermissibly forced the jury to decide a material question of law. While a determination of a question of law is subject to a plenary review on appeal, we cannot make the necessary factual findings that underlie the question of law. *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 88, 612 A.2d 1130 (1992); *State* v. *Zollo*, 36 Conn. App. 718, 726, 654 A.2d 359 (1995). As our disposition of this issue requires the case to be remanded for a new trial consistent with this opinion, we find it unnecessary to review the other claims raised by the plaintiff.[9] We also find it unnecessary to review the issue raised by the defendant's cross appeal.

On the plaintiff's appeals, the judgment is reversed and the case is remanded for a new trial; the defendant's cross appeal is dismissed.

In this opinion the other judges concurred.

---

[9] One of the plaintiff's claims is that the trial court improperly refused to submit separate verdict forms to the jury. The form utilized by the trial court contained separate questions for each of the two counts alleged in the plaintiff's complaint, but only one question related to damages. The plaintiff argues that there should have been separate questions related to damages because the trial court had given different instructions on the measure of damages for each count. We note that the verdict form utilized by the trial court was almost identical to the plaintiff's proposed special interrogatories. Because we remand for a new trial, the plaintiff is again free to submit proposed interrogatories that include separate verdict forms for each count.